IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| **Plaintiff** : | |
| V. : | CRIMINAL NO. 07-349 (RWR) |
| : | |
| **VALERIE JENKINS** : | |
| : | |
| **Defendant** : | |

**MEMORANDUM IN AID OF SENTENCING**

Defendant Valerie Jenkins, through counsel, respectfully submits the following Memorandum in aid of her sentencing.

On April 22, 2008, Valerie Jenkins will come before this Court to be sentenced pursuant to her guilty plea to mail fraud. In this Memorandum, Ms. Jenkins argues that the two-level increase in offense level discussed in the Presentence Report (PSR) for abuse of position of trust is unwarranted and her correct Total Offense Level is 13. Ms. Jenkins also argues that a sentence of probation is the most reasonable sentence in which the court can impose in this matter.

**DISCUSSION**

**I.     THE POST-BOOKER SENTENCING FRAMEWORK.**

Under Justice Breyer's majority opinion in Booker, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. See 18 U.S.C. § 3553(a)(4)." United States v. Booker, 125 S.Ct. 738 (2005). While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in Booker held that courts must consider all the purposes of sentencing set

1

forth in 18 U.S.C. § 3553(a). Pursuant to Booker, therefore, courts must treat the Guidelines as one, among several, sentencing factor.

Pursuant to 18 U.S.C. §§ 3562 and 3553(a) – which were explicitly endorsed by the Supreme Court in Booker – sentencing courts should consider the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the Booker majority:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of Booker, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. After Booker, courts need not justify sentences outside the guideline range by citing factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may exercise their discretion in individual cases and impose sentences which are not within the proposed guideline range.

More recently, the Supreme Court reaffirmed that the Sentencing Guidelines are merely one factor to be considered by district courts when fashioning a reasonable sentence and that the Sentencing Guidelines are not to be weighed more heavily than other sentencing factors. See Rita v. United States, 127 S.Ct. 2456 (2007) and Gall v. United States, 128 S.Ct. 586 (2007). A sentencing court shall not simply presume that a sentence within the Guideline range is automatically reasonable or that a sentence within the Guideline range is more reasonable than a sentence outside of the Guideline range. Id.. The sentencing court further shall not presume that a sentence outside of the Guidelines range is unreasonable. Id.. By considering the Sentencing Guidelines along with all of the factors set forth 18 U.S.C. § 3553(a), "the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure." Rita at 2465. It is critical for sentencing courts to consider all sentencing factors and to not give undue

weight to the Sentencing Guidelines because, as the Supreme Court recently reemphasized, '[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.' Gall at 598 (quoting Koon v. United States, 518 U.S. 81, 113 (1996)).

As discussed below, after consideration of all relevant sentencing factors, a sentence of probation is a reasonable sentence and probation is the specific sentence which Ms. Jenkins requests this court to impose in the instant case.

## II.    UNITED STATES SENTENCING GUIDELINES

Ms. Jenkins and the government agree with how the sentencing guidelines should be calculated in this case.[1]  The parties agree that Ms. Jenkins's base offense level is 6 and that the only applicable upward adjustment is a ten level enhancement due to the loss amount.  The parties also agree that Ms. Jenkins is entitled to a three level downward adjustment as a result of her acceptance of responsibility. With one exception, the PSR in this case calculates the sentencing guidelines in a manner consistent with the calculations of both parties.  The one exception is that the PSR writer believes that a two level upward adjustment pursuant to U.S.S.G. § 3B1.3 applies to this case because the PSR writer believes Ms. Jenkins abused a position of trust.  Ms. Jenkins disagrees with the PSR writer's assessment with regard to the abuse of position of trust enhancement and she believes such an enhancement is improper here.  Ms. Jenkins's sentencing guideline range is 12-18 months without the abuse of position of trust enhancement and it is 18-24 months with the enhancement.

---

[1]The agreement between the parties is set forth in paragraph 3 of the plea agreement and the government reaffirms its agreement with these calculations in its Memorandum in Aid of Sentencing.

**A.     The Offense Committed By Ms. Jenkins Did Not Constitute An Abuse Of Position Of Trust, As Defined By United States Sentencing Guidelines (U.S.S.G.) § 3B1.3.**

Under the Sentencing Guidelines, a defendant can receive a two-level upward adjustment if she "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. In the Application Notes for U.S.S.G. § 3B1.3, it is stressed that "`[p]ublic or private trust' refers to a position of public or private trust characterized by professional or managerial discretion." U.S.S.G. § 3B1.3, Application Note, 1. The only examples of positions of trust provided in the Sentencing Guideline's commentary under the heading of "Definition of 'Public or Private Trust'" include the following: attorneys, bank executives and physicians. Id.

Cases in this Circuit have re-emphasized the importance of the standards set forth in the Application Notes to U.S.S.G. § 3B1.3 by holding that these standards must be present in order for the abuse of trust enhancement to apply. See U.S. v. West, 56 F.3d 216 (D.C. Cir. 1995) and U.S. v Smaw, 22 F.3d 330 (D.C. Cir. 1994). In West, the court held that the amount of professional and managerial discretion required before an abuse of position of trust enhancement can be applied must be substantial. West at 220. The Court also recognized that "the commentary's focus on positions characterized by professional or managerial discretion places a significant limit on the types of positions subject to the abuse-of-trust enhancement." Id.. Otherwise, the Smaw Court warned, the definition of a position of trust "becomes so boundless as to be meaningless." Smaw at 332.

Here, Ms. Jenkins clearly did not occupy a position of trust. The position she occupied did not grant her "substantial professional or managerial discretion." See West at 220. In fact, Ms. Jenkins's position was neither professional nor managerial. Ms. Jenkins was employed merely as a bookkeeper and

she had no supervisory authority over anyone. Ms. Jenkins's position required no college education, no specialized training and her job did not require her to possess any type of license.[2] Dr. Harry Wachs and his wife, Ruth Wachs, supervised Ms. Jenkins. Dr. and Mrs. Wachs managed Dr. Wachs's practice and they always had more authority than Ms. Jenkins with regard to everything she did for them. Dr. and Mrs. Wachs had weekly meetings with Ms. Jenkins as a way to supervise and monitor her. Both Dr. Wachs and Ruth Wachs had complete access to all financial records and books. Dr. Wachs employed only a few people and, when including Dr. Wachs and his wife, about one-third of the people there had signatory authority with respect to his business accounts. In addition to Ms. Jenkins, Dr. Wachs and Ruth Wachs, therapist Sandra Spigler had signatory authority. Contrary to prudent practice, Dr. Wachs never had an internal audit during the time of Ms. Jenkins's employment.

Despite Ms. Jenkins's lack of professional or managerial discretion, the PSR writer concludes that an enhancement under U.S.S.G. § 3B1.3 is appropriate because "Ms. Jenkins was a trusted bookkeeper employed by the victim for 24 years." PSR, p. 18. The PSR writer also notes that "[Ms. Jenkins] and the victim were the only persons exercising signatory authority over the victim's business account." Id..[3] The PSR writer cites U.S. v. Becraft, 117 F.3d 1450 (D.C. Cir. 1997) as support for her position. When comparing Becraft with the instant case, however, some significant differences exist. In Becraft, the defendant's position was as an office manager and a marketing director. Here, Mr. Jenkins did not hold

---

[2]Like her job requirements, Ms. Jenkins's background is characterized by limited education and limited training. Mr. Jenkins does not possess a college degree or any professional license. Other than a few courses at a local community college, Ms. Jenkins has taken no course work relating to accounting, taxes or any other financial matters. Ms. Jenkins has also not received any formal training in these areas.

[3]As mentioned above, it is Ms. Jenkins's position that Dr. Wachs, Ruth Wachs and Ms. Spigler also exercised signatory authority over the business accounts.

any managerial position and she was not a director. The court in Becraft also placed great emphasis on the supervisory nature of the defendant's position and the substantial authority the defendant exercised. In the instant case, Ms. Jenkins had no supervisory powers and any authority she maintained was subject to supervision, monitoring and approval.

The facts of the instant case or more similar to the facts present in U.S. v. Helton, 953 F.2d 867 (4th Cir. 1992). In Helton, it was held that the district court's refusal to apply an enhancement for abuse of position of trust was proper where a low-level employee was able to steal from her employer because she was trusted by her supervisor and her conduct was not being monitored. Helton at 869-870. Despite the amount of trust the defendant received from her employer and the fact that her crimes went unnoticed for a significant period, the court held that not applying the abuse of position of trust enhancement was appropriate because her conduct could have been detected with proper monitoring. The court found it improper to apply the § 3B1.3 enhancement in cases where offenders are not properly supervised or audited and the court noted that "being subject to lax supervision alone does not convert one's job into a 'position of trust' under section 3B1.3. Id.. As in Helton, the trust Ms. Jenkins's employer placed in her does not make her position a position of trust. Despite the trust placed in Ms. Jenkins, her position was still a position without managerial or supervisory authority. Although Dr. and Ruth Wachs met with Ms. Jenkins weekly in order to supervise her work, they did not perform their supervisory and monitoring duties well. Dr. and Ruth Wachs should have carefully reviewed the financial records and books and they should have had periodic audits conducted. If the financial records were more carefully reviewed and if audits were performed, Ms. Jenkins's unlawful conduct would not have been successful. Therefore, as in Helton, Ms. Jenkins's position cannot be converted to a position of trust simply because her work was not properly monitored.

Based on the above discussion, Ms. Jenkins clearly did not hold a "position of trust" while employed for Dr. Harry Wachs. For that reason, Ms. Jenkins could not have abused any position of trust and an enhancement under U.S.S.G. § 3B1.3. is inapplicable to her case.

### III.    18 U.S.C. § 3553(a) FACTORS.

#### A.    Nature and Circumstances of the Offense and the History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))

Unlike the most serious offenses, the crime involved in the instant case is a nonviolent offense. Additionally, although the victim in this case was a physician, the instant offense did not cause any harm to any patients of Dr. Wachs and the instant crime did not jeopardize the quality of care provided to any of Dr. Wachs's patients. Ms. Jenkins improperly took money from Dr. Wachs because she was suffering financial problems. Ms. Jenkins, however, recognizes that her conduct is not excused because she was having financial problems and she seriously regrets her involvement in this offense. Ms. Jenkins is sympathetic to the harm she caused Dr. Wachs and she is anxious to begin repaying the money she took. When her crimes were detected a couple of years ago, to her credit, Ms. Jenkins immediately accepted responsibility for her conduct and she assisted Dr. Wachs with his efforts to properly account for all stolen funds. More recently, when the instant prosecution began against Ms. Jenkins, she quickly agreed to continue accepting responsibility and entered into a pre-indictment guilty plea due to her conduct from a few years earlier. Since her conviction, Ms. Jenkins has continued accepting responsibility for her conduct and she continues to be very remorseful.

Regarding the history and characteristics of Ms. Jenkins, with the exception of her offense related conduct in this case, she has led a very productive, respectable and law abiding life. Ms. Jenkins was born in Washington, D.C. and she was raised in the District of Columbia and in the state of Maryland. PSR,

¶¶ 29 & 30. While growing up, Ms. Jenkins was not particularly close to her mother and she witnessed her father physically abuse her mother on several occasions. PSR, ¶ 30. Ms. Jenkins attended highschool at St. Mary's Academy where she volunteered for the Red Cross and was involved in a theater club. PSR, ¶ 49. Ms. Jenkins graduated from St. Mary's Academy in 1972 and, during the latter part of the 1970s, Ms. Jenkins began attending Charles County Community College. PSR, ¶¶ 49 & 50. Due to financial reasons, Ms. Jenkins discontinued her education at Charles County Community for a few years. Ms. Jenkins was able to resume her education at the college in about 1987 and her father passed away later that same year. The death of her father severely depressed Ms. Jenkins and, as a consequence, she was unable to complete her course work at Charles County Community College. PSR, ¶ 50.

Ms. Jenkins married at a fairly young age and she and her husband began living together in Maryland when she was eighteen years of age. PSR, ¶ 33. Ms. Jenkins and her husband had five children together. PSR, ¶ 34.[4] Ms. Jenkins and her husband both worked in order to support their family. From about 1973 to about 1980, Ms. Jenkins was employed by H&R Block during tax season. PSR, ¶ 52. Ms. Jenkins was also employed as a bookkeeper for Multi Family Housing from 1975 to 1979. PSR, ¶ 53. Since about 1980, Ms. Jenkins has been self employed as a bookkeeper and tax advisor.[5] Since about 2002, Ms. Jenkins has been the primary financial provider for her family.[6]

When Ms. Jenkins appears before this court for sentencing, her criminal history will reflect that

---

[4]All of their children are now grown and all of them are employed. Many of her children now have families of their own and Ms. Jenkins and her husband currently have six grandchildren.

[5]Ms. Jenkins remains self-employed at the present time.

[6]Since 2002 Ms. Jenkins's husband has been unable to work to due an employment related injury he suffered.

she has never been previously convicted of a crime. Ms. Jenkins will also appear before the court with family support. Ms. Jenkins's husband is aware of her conviction in the instant case and he has been supportive of her. PSR, ¶ 38.[7] Her husband was present in court when she entered her guilty plea and he accompanies her to all of her appointments related to this case.

### B.     Factors Pursuant to 18 U.S.C. § 3553(a)(2)

As with all offenses, Ms. Jenkins's misconduct is certainly serious. However, her conduct is not nearly as egregious as conduct involving violence, dangerous threats, weapons or serious drug related activity. Moreover, in this particular case, the immediate and consistent acceptance of responsibility which Ms. Jenkins has shown further mitigates the seriousness of her offense. Due to these factors regarding the seriousness of this offense as well as Ms. Jenkins's history and characteristics (e.g. her lack of any prior criminal history, her family responsibilities and her employment history), a sentence involving no further incarceration is a sentence which will adequately promote respect for the law and such a sentence will provide just punishment for the offense. See 18 U.S.C. § 3553(a)(2)(A).

A sentence involving no further incarceration will provide ample deterrence for Ms. Jenkins and anyone else who may consider committing a similar crime. See 18 U.S.C. § 3553(a)(2)(B). For Ms. Jenkins or any other similarly situated person, the hassles and consequences of being prosecuted and obtaining a felony conviction is a huge deterrence. Also, the obligations, restrictions and limitations on ones freedom due to being placed on supervision is substantially punitive and will have a profound

---

[7]Although Ms. Jenkins's children are unaware of the instant conviction, Ms. Jenkins enjoys a very close relationship with them and their children. Since Ms. Jenkins became an adult, she has become very close to her mother as well.

deterrent effect.[8]

Ms. Jenkins's background and her post-offense conduct indicate that a sentence of incarceration is unnecessary in order to protect the public from any further crimes by Ms. Jenkins. See 18 U.S.C. § 3553(a)(2)(C). Ms. Jenkins has no prior convictions and she immediately accepted responsibility for her conduct in this case. Ms. Jenkins's involvement in this offense was clearly an aberration. Both before and after the offense, Ms. Jenkins has been a law abiding, hard working, and family oriented person. Under these circumstances, there is absolutely no need to incarcerate Ms. Jenkins for any purpose related to protecting the community.

Further incarcerating Ms. Jenkins will not assist her with any educational, vocational, medical or other correctional training, treatment or care. See 18 U.S.C. § 3553(a)(2)(D). Ms. Jenkins has been continuously employed for about thirty five years. In fact, incarceration will only cause a substantial disruption and setback with respect to Ms. Jenkins's employment and her ability to provide for her family. Because Ms. Jenkins is self-employed and the success of her business depends on clients she has gained over the years, Ms. Jenkins will suffer great harm if she is incarcerated. Since Ms. Jenkins will be unable to serve her clients while in jail, her clients will inevitably have to go elsewhere to receive the services she has been providing them. If incarcerated, it is unlikely that Ms. Jenkins will be able to regain the clients

---

[8]In Gall v. United States, the Supreme Court emphasized that non-custodial sentences which involve only supervision are "nonetheless subject to several standard conditions that substantially restrict [a defendant's] liberty." 128 S.Ct. at 595. The Gall Court further notes that '[p]robation is not granted out of a spirit of leniency' and that 'probation is not merely "letting an offender off easily"' (quoting Advisory Council of Judges of National Council on Crime and Delinquency, Guides for Sentencing 13-14 (1957)). Id.. The Court continues by noting the following: '[T]he probation or parole conditions imposed on an individual can have a significant impact on both that person and society .... Often these conditions comprehensively regulate significant facets of their day-to-day lives .... They may become subject to frequent searches by government officials, as well as to mandatory counseling sessions with a case worker or psychotherapist' (quoting 1 N. Cohen, The Law of Probation and Parole § 7:9 (2d ed. 1999). Id..

she will certainly lose and it will be difficult for her to earn a sufficient income.

Ms. Jenkins's husband will also suffer greatly if his wife is incarcerated. Due to his medical condition, Mr. Jenkins relies heavily on his wife for financial support and he will no longer have this support if she is incarcerated. Also, Mr. Jenkins will suffer along with Ms. Jenkins from the impact her incarceration will have on her business and her ability to continue with her work after her release.

### C. The Kinds of Sentences Available (18 U.S.C. § 3553(a)(3))

Because there is no statutory mandatory minimum sentence required in this case and because a sentence within the Sentencing Guidelines is clearly not mandatory, a sentence of probation is a sentencing option which is available to this Court. In order to further punish Ms. Jenkins and to provide some assistance to the community, the Court may also order Ms. Jenkins to perform a substantial amount of community service while on supervision.

### E. The Need to Provide Restitution to Any Victims (18 U.S.C. § 3553(a)(7))

Restitution to the victim is an important function of sentencing. In order to best accomplish this important goal, it is critical that Ms. Jenkins receive a sentence which will allow her to continue working so that she can have the ability to make payments towards restitution. A sentence of imprisonment in this case will only hinder – rather than further – the goal of providing restitution to the victim. Obviously, if Ms. Jenkins is incarcerated she will be unable to pay restitution during the period while she is in custody. Also, as discussed above, due to the nature of her work, Ms. Jenkins will have great difficulty earning sufficient money after her release from imprisonment. Therefore, this Court should fashion a sentence which does not include imprisonment in order to best assist the victim with restitution. A non-custodial sentence will allow the victim to begin receiving restitution sooner and it will allow Ms. Jenkins to make restitution payments in larger amounts.

**CONCLUSION**

For the reasons discussed above, a sentence of probation is the most reasonable and appropriate sentence in this case. Such a sentence will adequately punish Ms. Jenkins as well as afford her an opportunity to remain in the community and earn money in order to pay restitution and to support her family. Such a sentence, especially if coupled with a community service obligation, will also benefit the community because it will best further the goal of providing restitution to victims and because it will require Ms. Jenkins to assist the broader community through various community service activities. Ms. Jenkins and her family will also be best served by a sentence of probation. Such a sentence will allow Ms. Jenkins to continue providing for her husband. For these reasons, as well as any other reasons this Court may consider, Ms. Jenkins respectfully requests that the court impose a sentence of probation in this case.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
TONY W. MILES
Assistant Federal Public Defenders
625 Indiana Avenue, N.W.
Washington, D.C. 20004
(202) 208-7500